**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT**

VARILEASE FINANCE, INC.,
and VFI KR SPE I LLC,                     Case No.  22-cv-12875

   Plaintiffs,                              Hon. Bernard A. Friedman

v.

INTERCONTINENTAL
CAPITAL GROUP, INC., and
DUSTIN A. DIMISA,

   Defendants.

---

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL ESCROW OF TAX REFUND**

Defendants Intercontinental Capital Group, Inc. ("ICG") and Dustin DiMisa

respectfully request that the Court deny Plaintiffs' Motion to Compel Escrow of Tax

Refund (Docket No. 20, the "Second Asset Freeze Motion"). In support, Defendants

state as follows:

1.    Plaintiffs' filed this lawsuit on November 18, 2022. Plaintiffs assert two

ordinary contract claims (breach of contract and breach of guaranty) and three

"Article 9"-type claims (foreclosure, claim and delivery, and specific performance).

2.      On February 13, 2023, Plaintiffs filed a motion seeking to possess, freeze, and/or force ICG to escrow – pre-judgment – all of ICG's tax-related assets, which Plaintiffs claim are their "collateral" (the "First Asset Freeze Motion," Docket No. 11).

3.      The Court required Defendants to respond within four days.

4.      Defendants filed a comprehensive response, supported by affidavits and analysis of the relevant legal authorities (the "First Response," Docket No. 13). Without repeating in detail the First Response (which is equally applicable here, and which Defendants attach as **Exhibit 1** hereto and incorporate herein by reference), Defendants argued that:

a) Plaintiffs had previously disclaimed taking an all-asset lien as to "Loan #3," which is the only loan at issue in this case (First Response, pp. 6-8, 13-14);

b) Even if Plaintiffs had an all-asset lien, Plaintiffs had not shown that their lien attaches to any federal tax refunds or credits owing to ICG because: (i) governmental transfers are expressly excluded from the scope of Michigan's Article 9 (First Response, p. 15); and (ii) Plaintiffs' 2018, one-sentence-long, purported "all-asset security agreement" did not include an after-acquired property clause, which Michigan law

1

requires in order to obtain a security interest in a borrower's after-acquired property (First Response, pp. 16-18)[1]; and

c) Plaintiffs had not otherwise demonstrated that the general prohibition against federal courts freezing a civil defendant's assets pre-judgment was inapplicable in this case (First Response, pp. 12, 19).

5.      On February 21, 2023, the Court held a hearing on the First Asset Freeze Motion. Mr. DiMisa flew in from New York and personally appeared in court ready to answer questions from the Court and to testify to the veracity of the statements in his affidavit submitted in support of the First Response.

6.      Plaintiffs appeared through counsel only, with no witnesses, and barely responded to the factual or legal arguments raised in the First Response. Instead, Plaintiffs tried to convince the Court that an asset freeze order was harmless and would simply maintain Plaintiffs' view of the "status quo" – even though it would cause ICG to default on obligations to other creditors and effectively force ICG into bankruptcy.

---

[1] "The burden of proving a lien rests on the one claiming the lien." *Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, No. 13-14909, 2014 WL 2559264, at *8 (E.D. Mich. June 6, 2014) (citing *Joy Oil Co.,* 319 Mich. at 282, 29 N.W.2d 691).

7.     The Court heard oral argument from both sides and properly declined to grant the First Asset Freeze Motion.  Instead, the Court provided the parties 120 days to conduct discovery (Docket No. 16).

8.     On April 21, 2023, halfway through the provided discovery period, Plaintiffs filed the Second Asset Freeze Motion. Defendants were again given only a short window to respond.

9.     Plaintiffs' Second Asset Freeze Motion is basically a re-tread of their First Asset Freeze Motion. Plaintiffs cite no new facts, no new evidence, and no new law.[2]

10.    If anything, Plaintiffs' argument that they are entitled to prevent ICG from using a federal tax refund to pay ICG's ongoing business expenses during the pendency of this case is even weaker now than it was two months ago. The reasons for this are as follows:

  a) Plaintiffs' First Asset Freeze Motion at least purported to be "verified" as required by the Michigan Court Rules on which Plaintiffs rely.  *See* MCR 3.105(E)(1). Their Second Asset Freeze Motion is not verified;

---

[2] Plaintiffs cite a single case in their Second Asset Freeze Motion – *Warchol v. Dynamic Control, Inc.*, 2015 WL 6161709 (Mich. Ct. App. 2015) – which Plaintiffs claim to be the "controlling or most appropriate authority." In *Warchol*, the plaintiff secured creditor was granted possession of its collateral as part of its foreclosure judgment against the defendant, not in the form of pre-judgment possession or a pre-judgment asset freeze. *Warchol* is not authority for the relief sought by Plaintiffs.

b) In support of their First Asset Freeze Motion, Plaintiffs submitted an affidavit from one of their employees (*see* Docket No. 15-7) claiming that he had called ICG at some point in early June 2021 and told ICG verbally, before Loan #3 closed, that Plaintiffs would not remove their all-asset lien. Since the First Asset Freeze Motion was filed, Defendants have obtained more than 3,400 business records from Plaintiffs totaling more than 12,000 pages. There is no record of this alleged conversation in any of the documents Plaintiffs have produced to date;

c) In response to Defendants' document requests seeking audio or computer recordings, call logs and/or notes or descriptions related to such alleged calls, Plaintiffs responded: "Plaintiffs have no responsive materials in their possession, custody, or control." *See* **Exhibit 2**, Plaintiffs' Responses to Defendants' First Set of Document Requests, at Requests No. 8 & 9;

d) What Plaintiffs' documents do appear to show (subject to further discovery) is that Plaintiffs did <u>not</u> rely on any purported all-asset lien in making Loan #3 to ICG.  By way of example, in one internal email in May of 2021, Plaintiffs referred to their equipment collateral as "a SLB [sale-leaseback] of pure crap" and "garbage."  *See* **Exhibit 3**.  In another internal email in June of 2021, one of Plaintiffs' employees

4

noted that "we all agree that the collateral is not what we based our [funding] approval decision on[.]" *See* **Exhibit 4**; and

e) Plaintiffs just filed a motion for partial summary judgment limited strictly to their two contract claims for money damages (Docket No. 21), implicitly conceding that there are still material questions of fact as to whether Plaintiffs have a valid all-asset lien on ICG's assets.

11.     Having implicitly conceded that there are questions of fact as to whether Plaintiffs even have a lien on this federal tax refund, Plaintiffs have been forced to fall back to insinuating that the Court should grant their Second Asset Freeze Motion in order to prevent Defendants from rendering themselves uncollectible during the pendency of this case. *See* Docket No. 20, p. 16 ("Defendants have demonstrated that…they are very likely in a financially distressed state.") This argument must be rejected.[3]

---

[3] *See Barrette Outdoor Living, Inc. v. Michigan Resin Representatives, LLC*, No. 11-13335, 2014 WL 1516197, at *2 (E.D. Mich. Apr. 17, 2014) ("Under Fed.R.Civ.P. 65, the loss of the ability to collect a money judgment is not usually regarded as irreparable harm. The Supreme Court highlighted this point in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund Inc.,* 527 U.S. 308, 333, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), stating that '[t]he District Court lacked the authority to issue a preliminary injunction preventing [the defendant] from disposing of [its] assets pending adjudication' of a contract claim for money damages.")

12.     Accordingly, for the same reasons that the Court declined to grant the First Asset Freeze Motion, the Court should deny the Second Asset Freeze Motion as well.

WHEREFORE, Defendants respectfully request that the Court deny Plaintiffs' Second Asset Freeze Motion.

Respectfully submitted,

Dated: April 28, 2023

/s/ Doron Yitzchaki
Doron Yitzchaki (P72044)
Robert L. Avers (P75396)
Dickinson Wright PLLC
350 S. Main Street, Ste 300
Ann Arbor, MI 48104
(734) 623-1947
dyitzchaki@dickinsonwright.com
ravers@dickinsonwright.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the foregoing documents with the Court's electronic filing system, which will send notification of such filing to counsel of record.

/s/ Doron Yitzchaki
Doron Yitzchaki (P72044)

6