# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DISTRICT

VARILEASE FINANCE, INC., and VFI KR SPE I LLC,

   Plaintiffs,

v.

INTERCONTINENTAL CAPITAL GROUP, INC., and DUSTIN A. DIMISA,

   Defendants.

Case No. 22-cv-12875

Hon. Bernard A. Friedman

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF ISSUE PRESENTED................................................................ iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES...........................iv

I.  INTRODUCTION ..........................................................................................1

II. STATEMENT OF FACTS .............................................................................1

    A. Background on ICG and Plaintiffs. .......................................................1

    B. Plaintiffs' first and second loans to ICG. ..............................................2

    C. Plaintiffs' third loan to ICG. .................................................................3

    D. Plaintiffs' damage claims are vastly overstated. ...................................3

III. STANDARD OF REVIEW............................................................................4

IV. ARGUMENT..................................................................................................5

    A. There is a genuine issue of material fact as to the amount of Plaintiffs' damages. ...............................................................................5

    B. Plaintiffs' "Stipulated Loss Value" Constitutes an Unenforceable Penalty. ..........................................................................6

V. CONCLUSION.............................................................................................11

CERTIFICATE OF SERVICE ................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).............................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................4

*Corl v. Huron Castings, Inc.,* 450 Mich. 620; 544 N.W.2d 278 (1996)...................6

*Curran v. Williams*, 352 Mich. 278; 89 N.W.2d 602 (1958)................................8, 9

*Encore Big Beaver LLC v. Uncle Julio's of Fla., Inc.*, 2022 WL 428405 (E.D. Mich. Feb. 11, 2022)...................................................................................................5

*ePlus Grp., Inc. v. Panoramic Commc'ns LLC*, 2003 WL 1572000 (S.D.N.Y. Mar. 27, 2003)..........................................................................................10, 11

*First Gold Buyers, Inc. v. Players Choice Golf, LLC*, 2020 WL 1968645 (Mich. Ct. App. Apr. 23, 2020) ........................................................................8, 9

*Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 2d 815 (E.D. Mich. 2007) .........................................................................................................................6

*In re Exemplar Mfg. Co.*, 331 B.R. 704 (Bankr. E.D. Mich. 2005) .....................8, 9

*In re Republic Airways Holdings, Inc.*, 598 B.R. 118 (Bankr. S.D.N.Y. 2019) ................................................................................................................9, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...............5

*Nichols v. Seaks,* 296 Mich. 154, 295 N.W. 596 (1941) ..........................................8

*SJF Material Handling, Inc. v. Motor City Scrap, Inc.*, 2009 WL 4950465 (E.D. Mich. Dec. 15, 2009)...........................................................................................5

## STATEMENT OF ISSUE PRESENTED

Should the Court deny Plaintiffs' Motion for Partial Summary Judgment as to Counts I and II of their Complaint because there are genuine issues of material fact as to the amount of Plaintiffs' damages and because Plaintiffs' "Stipulated Loss Value" constitutes an unenforceable penalty?

Defendants Answer:  Yes

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Curran v. Williams*, 352 Mich. 278; 89 N.W.2d 602 (1958)

*ePlus Grp., Inc. v. Panoramic Commc'ns LLC*, 2003 WL 1572000 (S.D.N.Y. Mar. 27, 2003)

*First Gold Buyers, Inc. v. Players Choice Golf, LLC*, 2020 WL 1968645 (Mich. Ct. App. Apr. 23, 2020)

*Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 2d 815 (E.D. Mich. 2007)

*In re Exemplar Mfg. Co.*, 331 B.R. 704 (Bankr. E.D. Mich. 2005)

*In re Montgomery Ward Holding Corp.*, 326 F.3d 383 (3d Cir. 2003)

*In re Republic Airways Holdings, Inc.*, 598 B.R. 118 (Bankr. S.D.N.Y. 2019)

## I. INTRODUCTION

Defendants Intercontinental Capital Group, Inc. ("ICG") and Dustin DiMisa respectfully request that the Court deny Plaintiffs' motion for partial summary judgment as to Counts I and II of Plaintiffs' Complaint. Defendants do not contest that ICG breached the Master Lease Agreement's Schedule No. 3 by failing to make all equipment rental payments required by Schedule No. 3 when ICG became financially unable to do so. However, as set forth below, Plaintiffs' damage claims are vastly overstated and there are, at the very least, genuine issues of material fact as to the amount Defendants owe to Plaintiffs. Accordingly, while partial summary judgment on the issue of liability as to Counts I and II may be proper, partial summary judgment as to the amount of damages is not.

## II. STATEMENT OF FACTS

The facts set forth below are supported by the Declarations of ICG's CEO, Dustin DiMisa, and its CFO, Howard Stein, attached as **Exhibit A** and **Exhibit B**, respectively, and papers already on file with the Court which are cited herein.

### A.      **Background on ICG and Plaintiffs.**

ICG is a direct mortgage lender based in New York that, until recently, had operations around the country. At its peak, ICG employed nearly 1,900 employees. Today it has six remaining employees, including Mr. DiMisa and Mr. Stein.

In mid-2018, ICG was contacted by a representative of Plaintiffs and offered financing structured as an equipment "sale-leaseback". In other words, ICG would purport to "sell" certain office furniture and equipment that it already owned, or was already in the process of buying, to Plaintiffs who would then purport to "lease" it back to ICG for a period of time. The monthly "rental" payments were essentially calculated as amortized repayments of a high interest loan.

ICG had had no prior dealings with Plaintiffs but agreed to try them out with an initial loan. To that end, on or about June 18, 2018, ICG and Plaintiffs executed a "Master Lease Agreement" (the "MLA", which together with the related "sale-leaseback" and other docs related to the initial loan, is attached to Plaintiffs' Complaint, ECF No. 1 at PageID 22-93). The MLA, by its terms, is governed by Michigan law. *See* MLA § 19(a).

### B.  **Plaintiffs' first and second loans to ICG.**

On or about July 16, 2018, ICG and Plaintiffs closed on their first loan pursuant to the MLA for $1,000,000 ("Loan #1), and on or about August 13, 2019, ICG and Plaintiffs closed on a second loan for $1,000,000 (Loan #2). ICG repaid Loan # 1 and Loan #2 in full, and those loans are not at issue in this case.[1]

---

[1] *See* ECF No. 1, PageID 217, fn. 1 (Plaintiffs state, "The obligations under Schedules No. 01 and No. 02 were fully satisfied.")

2

### C.     Plaintiffs' third loan to ICG.

On or about June 25, 2021, ICG and Plaintiffs closed on their third loan pursuant to the MLA ("Loan #3" a/k/a "Schedule No. 3"). It is Schedule No. 3 that Plaintiffs claim ICG breached.

Pursuant to Schedule No. 3, ICG sold to Plaintiffs for $5 million, and then leased back from Plaintiffs, the equipment listed in the schedule.[2] ICG was required to make rental payments to Plaintiffs for a period of 30 months as set forth in Schedule No. 3 (at ECF No. 1, PageID 106), as later modified by a mutually-agreed upon amendment to Schedule No. 3 (at ECF No. 1, PageID 108). In addition, at the end of the lease term, ICG had the option to either purchase the equipment back from Plaintiffs for an additional payment of $750,000.00 or else return the equipment to Plaintiffs.[3]

### D.     Plaintiffs' damage claims are vastly overstated.

As set forth in the Declaration of Howard Stein attached as **Exhibit B**, before defaulting on its monthly rental payments to Plaintiffs, ICG made payments to

---

[2] The equipment is set forth in the exhibit to Plaintiffs' Complaint entitled "Schedule NO. 03", at ECF No. 1 at PageID 112-171. It largely consists of miscellaneous IT equipment, accessories, and office furniture.

[3] ICG returned the equipment to Plaintiffs in February of 2023. Plaintiffs acknowledge in their motion that they have not accounted for any offset value of any of the returned equipment in their damages calculation. *See* Motion at p. 2.

Plaintiffs pursuant to Schedule No. 3 totaling $2,693,909.29. As further set forth in Mr. Stein's Declaration, had ICG never breached Schedule No. 3 but instead fully fulfilled its payment obligations to Plaintiffs under Schedule No. 3, and then returned the equipment to Plaintiffs (which it did), ICG's payments to Plaintiffs would have totaled $5,738,658.75.

Accordingly, Plaintiffs' damages should total $5,738,658.75 - $2,693,909.29 = $3,044,749.46. However, Plaintiffs seek a money judgment on Counts I and II of their Complaint totaling $5,253,734.40.

Defendants acknowledge that they also entered into a "Lease Payment Deferral Agreement" (ECF No. 21-4, PageID 483) with Plaintiffs on June 30, 2022, which extended and somewhat modified the calculation of payment terms of Schedule No. 3. However, even if Defendants were required to make the balance of payments still due to Plaintiffs under the Lease Payment Deferral Agreement, Defendants would only owe Plaintiffs $3,213,711.37, and not the more than $5.25 million now claimed by Plaintiffs.

### III. STANDARD OF REVIEW

Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317, 325 (1986). A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court must review all materials supplied, including pleadings, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.  ARGUMENT

**A.  There is a genuine issue of material fact as to the amount of Plaintiffs' damages.**

In a breach of contract action, the Court may grant a plaintiff partial summary judgment as to the issue of a defendant's liability for breach while finding that there is a genuine issue of material fact as to the amount of damages, precluding entry of a money judgment in favor of a plaintiff. *See e.g., Encore Big Beaver LLC v. Uncle Julio's of Fla., Inc.*, 2022 WL 428405, at *4 (E.D. Mich. Feb. 11, 2022); *see also SJF Material Handling, Inc. v. Motor City Scrap, Inc.*, 2009 WL 4950465, at *5 (E.D. Mich. Dec. 15, 2009) ("The Court agrees with SJF that, even if it breached the contract … summary judgment would be inappropriate because there is a dispute as to the amount of damages Motor City incurred as a result of that breach.")

Under Michigan law, which governs the MLA, the purpose of awarding breach of contract damages is to put the non-breaching party in as good a position as if the contract had been fully performed – not to punish the defendant for its

5

breach. *See Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 2d 815, 818–19 (E.D. Mich. 2007) ("The goal is to 'place the non-breaching party in as good a position as if the contract had been fully performed.'") (quoting *Corl v. Huron Castings, Inc.,* 450 Mich. 620; 544 N.W.2d 278, 280 (1996)). Here, as stated in Section II(D) above, Plaintiffs' actual "but for the breach" damages total somewhere between $3,044,749.46 and $3,213,711.37, yet Plaintiffs claim damages of more than $5.25 million. For this reason, there is a genuine dispute about the amount of Plaintiffs' damages.

  **B.**  **Plaintiffs' "Stipulated Loss Value" constitutes an unenforceable penalty.**

Plaintiffs, however, arrive at their damage calculation by plugging in a $4.5 million figure that they refer to as a "Stipulated Loss Value" of the equipment. *See* Motion, p. 2. This is indeed odd given that the equipment was not lost, damaged or destroyed, but was in fact returned to Plaintiffs in February.

Plaintiffs' motion does not entirely explain when or how Defendants are purported to have "stipulated" to these damages. Paragraph 5 of the Declaration of Burk Reynolds (which is attached as Exhibit 4 to the motion) refers to a "Stipulated Loss Value Table" which is attached as Exhibit G to the Complaint (at ECF No. 1, PageID 202-203). But that exhibit is a chart that Plaintiffs appear to have created after the fact specifically for this litigation. It is not a business record of Plaintiffs

6

and was not among the more than 3,400 records Plaintiffs have produced to Defendants to date. In other words, it is hearsay.

In addition, the Court should note that when Plaintiffs and Defendants were negotiating the terms of the Lease Payment Deferral Agreement in June of 2022, Plaintiffs originally requested that Defendants sign a proposed version of the Lease Payment Deferral Agreement that included a confession of judgment against ICG and Mr. DiMisa. That confession of judgment would have included references to the Stipulated Loss Value. However, the documentary record shows that Defendants *refused to sign* that version of the Lease Payment Deferral Agreement, and in response Plaintiffs removed the confession of judgment (together with its references to the Stipulated Loss Value) from the Lease Payment Deferral Agreement, after which Defendants executed the revised version (attached as Exhibit 3 to Plaintiffs' Motion).[4]

Plaintiffs instead seem to be arguing that ICG's original agreement to the MLA itself, back in 2018, constituted a "stipulation" to the pay Stipulated Loss Values in the event ICG defaulted on any future loan/schedule under the MLA,

---

[4] *See* **Exhibit C** (Plaintiffs' June 15, 2022 email to Defendants attaching the originally proposed Lease Payment Deferral Agreement containing a confession of judgment that referenced Stipulated Loss Values) and **Exhibit D** (Plaintiffs' June 30, 2022 email to Defendants' counsel stating "VFI is agreeable to dropping the confession of judgment from the Lease Payment Deferral Agreement" and attaching the revised version that Defendants ultimately signed).

regardless of whether those Stipulated Loss Values bore any realistic relationship to the actual damages Plaintiffs' would incur from such a breach.

But such an agreement would be unenforceable under Michigan law because liquidated damage clauses that amount to penalties – even if agreed to between two parties to a contract – are unenforceable under Michigan law. *See Curran v. Williams*, 352 Mich. 278; 89 N.W.2d 602, 604 (1958) ("Just compensation for the injuries sustained is the principle at which the law attempts to arrive. Courts will not permit parties to stipulate unreasonable sums as damages, and where such an attempt is made have held them penalties and therefore void and unenforceable."); *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711–12 (Bankr. E.D. Mich. 2005) ("Michigan common law is essentially the same [as the UCC]. A liquidated damage clause is void as a penalty if it provides for an amount of damages that is unreasonable in light of the possible injury suffered in the event of a breach…. In *Nichols v. Seaks,* 296 Mich. 154, 295 N.W. 596, 599 (1941), the Michigan Supreme Court noted… 'Before accepting as conclusive the convention of the parties, it must be examined, and the court must determine whether the predetermined figure is really in the nature of an attempted computation of the actual damages likely to result, or whether it has the effect of exacting a penalty from the contract breaker.'").

In a recent, analogous Michigan case, *First Gold Buyers, Inc. v. Players Choice Golf, LLC*, 2020 WL 1968645 (Mich. Ct. App. Apr. 23, 2020), the Michigan

Court of Appeals affirmed a trial court's refusal to enforce a liquidated damages provision in a loan agreement between the plaintiff and defendant that would have had the effect of doubling the amount to be repaid to the plaintiff in the event defendant defaulted on the loan. The trial court had awarded the plaintiff the outstanding principal and interest due on the loan rather than the agreed-to liquidated damages. The plaintiff appealed.

Relying on the *Curran* line of cases, the Court of Appeals stated, "[O]ur Supreme Court has held that where the parties have included a liquidated-damages provision in their agreement, as a matter of policy and equity, a court will award actual damages for a breach and ignore the liquidated-damages clause if the parties' agreement on damages is clearly unjust and unconscionable." *First Gold*, 2020 WL 1968645, at *6. The Court of Appeals upheld the trial court because the plaintiff presented no evidence that the formula used in the liquidated damages provision of the loan agreement "was reasonable in relation to [plaintiff's] potential injury from [defendant's] breach of the agreement" and no evidence that "actual damages were uncertain or difficult to ascertain" when the loan agreement was entered into. *Id.* at *7. The Court of Appeals further found, as this Court should in this case, that the "loss for the breach of a contract for the loan of money could easily be measured by the outstanding balance, plus interest." *Id.*

9

Another recent and instructive case is *In re Republic Airways Holdings, Inc.*, 598 B.R. 118 (Bankr. S.D.N.Y. 2019), which also dealt with a breached equipment lease agreement, very similar to the MLA, between two sophisticated commercial parties. In Republic Airways' bankruptcy, an equipment lessor filed a proof of claim against the debtor-lessee and a related debtor-guarantor seeking to recover under "Stipulated Loss Value" provisions in the governing lease, rather than asserting its actual damages. The lessee and guarantor objected to the lessor's claim and moved for summary judgment on the issue of whether such provisions constituted unenforceable penalties. The lessor vociferously asserted all of the same arguments Plaintiffs are likely to make (in their inevitable reply brief) here: freedom of contract, sophistication of the parties, the complex nature of commercial finance leases, the unconditional nature of the related guaranty, etc. *See In re Republic,* 598 B.R. at 128. The bankruptcy court, however, in a lengthy and detailed analysis of the relevant law, rejected all of these arguments. Instead, the court found that such Stipulated Loss Value provisions did in fact constitute an unenforceable penalty clause, and the court held (in favor of both the lessee and the guarantor) that the lessor should be limited to a claim for its actual damages. *Id.* at 129- 148.

Similarly, in *ePlus Grp., Inc. v. Panoramic Commc'ns LLC*, 2003 WL 1572000 (S.D.N.Y. Mar. 27, 2003), a federal court denied an equipment lessor's motion for summary judgment seeking to enforce a "Casualty Value" provision

10

(equivalent to the Stipulated Loss Values sought by Plaintiffs here) where, as here, the lessor "failed to show in [its] motion that the liquidated damages clause in the Master Lease is reasonable" and "[t]he Defendants have raised questions of fact as to whether the clause is in effect a penalty by placing [plaintiff] in a far better position than it would have been had the lease been fully performed." *ePlus,* 2003 WL 1572000, at *7; *see also In re Montgomery Ward Holding Corp.*, 326 F.3d 383 (3d Cir. 2003) ("casualty values" in equipment lease held to be unenforceable penalties).

For these additional reasons, there is a genuine dispute about the amount of Plaintiffs' damages. For the same reasons that the court in *ePlus* denied the lessor's motion for summary judgment in that case, the Court should deny Plaintiffs' motion for partial summary judgment here.

## V. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for partial summary judgment as to Counts I and II of Plaintiff's Complaint.

Respectfully submitted,

Dated: May 22, 2023

*/s/ Doron Yitzchaki*
Doron Yitzchaki (P72044)
Robert L. Avers (P75396)
Dickinson Wright PLLC
350 S. Main Street, Ste 300
Ann Arbor, MI 48104

11

(734) 623-1947  
dyitzchaki@dickinsonwright.com  
ravers@dickinsonwright.com  
*Attorneys for Defendants*

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2023, I electronically filed the foregoing documents and all exhibits hereto with the Court's electronic filing system, which will send notification of such filing to counsel of record.

*/s/ Doron Yitzchaki*
Doron Yitzchaki (P72044)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT**

VARILEASE FINANCE, INC.,
and VFI KR SPE I LLC,

   Plaintiffs,

v.

INTERCONTINENTAL
CAPITAL GROUP, INC., and
DUSTIN A. DIMISA,

   Defendants.

Case No. 22-cv-12875

Hon. Bernard A. Friedman

## **INDEX OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Intercontinental Capital Group, Inc. CEO, Dustin DiMisa |
| B | Declaration of Intercontinental Capital Group, Inc. CFO, Howard Stein |
| C | Plaintiffs' June 15, 2022 email to Defendants |
| D | Plaintiffs' June 30, 20222 email to Defendants' counsel |

4884-3176-7633 v8 [104461-1]